## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| TONYA A. HUNTER o/b/o ) | |
| BRYAN A. DANIELEY, a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:05-0670 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income (CSSI) under Title XVI of the Social Security Act. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Summary Judgment with Memorandum in Support (Document Nos. 8 and 9.) and Defendant's Brief in Support of Motion for Judgment on the Pleadings. (Document No. 10.)

The Plaintiff, Tonya A. Hunter, on behalf of her son, Bryan A. Danieley (hereinafter referred to as "Claimant"), filed an application for child's SSI benefits on September 27, 2002 (protective filing date), alleging disability as of September 1, 2002, due to attention deficit hyperactivity disorder. (Tr. at 63 - 66, 87.) Claimant's application was denied initially and upon reconsideration. (Tr. at 40 - 42, 44 - 46.) On April 3, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 47.) A hearing was commenced with Claimant appearing *pro se* on

August 22, 2003, before the Honorable R. Neely Owen, and ALJ Owen continued the hearing so that Claimant could obtain counsel. (Tr. at 199 - 207.) The hearing was recommenced on March 4, 2004, with Claimant represented by attorney Gregory Prudich. (Tr. at 208 - 238.) ALJ Owen issued a decision on October 16, 2004, finding Claimant not disabled. (Tr. at 17 - 27.) On June 27, 2005, the Appeals Council denied Claimant's request for review. (Tr. at 5 - 7.) Claimant filed a Complaint initiating this action on August 17, 2005. (Document No. 1.)

The Standard

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the Regulations in force during all times relevant to Claimant's claim, a three-step sequential evaluation is undertaken to determine disability for children. 20 C.F.R. § 416.924(a) and (b). First, the ALJ must determine whether the child is engaged in substantial gainful activity. Id. If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. Id. § 416.924(a) and (c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d). To meet or medically equal a listing, a child's impairment(s) must equal the severity of a set of criteria for an individual listing impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id., § 416. 924(d). If the child's impairment meets or medically or

functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. 20 C.F.R. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2). A mere diagnosis of an impairment, however, does not mean that it meets a listed impairment. See id. § 925(d). Rather, a child's impairment meets a listed impairment only if it meets all of the requirements of the listed impairment. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

As pertains to this case, listing 112.11 states that attention deficit hyperactivity disorder is

> [m]anifested by developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>     A. Medically documented findings of all three of the following:
>         1. Marked inattention; and
>         2. Marked impulsiveness; and
>         3. Marked hyperactivity.
> AND
>     B. * * * for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.02B.2.a - d provides that the required level of severity is met

> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . .; or
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests . . .; or
> d. Marked difficulties in maintaining concentration, persistence, or pace.

If a child has a severe impairment or combination of impairments that does not meet or medically equal any listing, the ALJ must decide in view of six domains of functioning whether the child has limitations which "functionally equal the listings" of disabling conditions. See 20 C.F.R. § 416.926a(a).

The Regulations provide that if a child's severe impairments do not meet or medically equal the listings, the Commissioner will assess all functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). Functional equivalence can be shown when a child has two "marked" limitations or one "extreme" limitation in six domains of functioning. 20 C.F.R. § 416.926a(a), (b)(1). The six areas of functioning include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. See 20 C.F.R. 416.926a(b)(1)(i) - (vi); 65 Fed. Reg. 54,747 (2000).[1] These domains are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). The Regulations state as follows respecting how the Social Security Administration considers a child's functioning:

> We will look at the information we have in your case record about how your functioning is affected during all of your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community. We will look at how appropriately, effectively, and independently you perform your activities compared to the performance of other children your age who do not have impairments.

See 20 C.F.R. § 416.926a(b). When evaluating a child's ability to function in each domain, several

---

[1] Prior to the 2001 changes, the broad areas of development or functioning in which a claimant's limitations were assessed included: (1) cognition/communication; (2) motor; (3) social; (4) personal; and (5) concentration, persistence or pace. 20 C.F.R. § 416.926a(c)(4)(i)-(iii) and (v)-(vi) (2000).

factors are taken into consideration to help determine whether the child's impairments affect his or her functioning and whether his or her activities are typical of other children his or her age who do not have impairments. Id. § 416.926a(g) - (l).

If a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain, the Commissioner will find that the impairment functionally equals the listings, and the child will be found disabled. Id. § 416.926a(a). The Regulations define a "marked" limitation as when an impairment interferes seriously with the child's functioning, and is more than moderate, but less than extreme. 20 C.F.R. § 416.926a(e)(2)(i) (2002.) A "marked" limitation also means when standardized tests are used as the measure of functional abilities, a valid score that is at least two, but less than three, standard deviations below the norm for the test. Id. The Regulations define an "extreme" limitation in a domain as when an impairment "very seriously" limits day-to-day functioning, or interferes "very seriously" with one's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(i). "Extreme" limitation also means "a limitation that is 'more than marked.'" Id. This rating is given to the worst limitations. See id.

20 C.F.R. § 416.924a provides that in determining disability for children, all relevant information in the case record will be considered, including medical evidence, such as testing and opinions from medical sources "about the nature and severity of your impairment," and information from other people, including parents, other caregivers, and teachers. 20 C.F.R. § 416.924a. The Regulations further specifically provide that ALJs may ask for and consider opinions from medical experts regarding the nature and severity of a child's impairment and on whether the impairment(s). equals the requirements of any impairment listed in Appendix 1. See 20 C.F.R. § 416.927(f)(2)(iii). In considering these opinions, ALJs evaluate them using the factors as used for evaluating all opinion

evidence, including the supportability and consistency of the evidence, and specialization of the source. Id.

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had never engaged in substantial gainful activity. (Tr. at 26, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairment of attention deficit hyperactivity disorder. (Tr. at 26, Finding No. 2.) At the third and final inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 26, Finding No. 3.) The ALJ found Claimant's mother's assertions respecting symptomatology, functional limitations and restrictions of activities of daily living "not fully credible as to a disabling impairment." (Tr. at 27, Finding No. 4.) The ALJ further found "no evidence of limitation relative to the domains of acquiring and using information; interacting and relating to others; moving about and manipulating objects; caring for himself; and health and physical well-being." (Tr. at 27, Finding No. 5.) Finally, the ALJ found "no evidence of less than a marked limitation relative to the domain of attending and completing tasks." (Tr. at 27, Finding No. 6.) For these reasons, the ALJ found Claimant not under a disability and therefore not entitled to benefits. (Tr. at 27.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on March 1, 1996, and was 8 years old at the time of the ALJ's decision. (Tr. at 26, Finding No. 1, 63, 213.) Claimant was enrolled in the second grade at the time of the administrative hearing. (Tr. at 213.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that "the medical evidence from the treating source [Dr. Safder, a pediatrician, and Ms. McFadden, a psychologist] and the evaluating source [Mr. Brezinski, a psychologist] with appropriate testing reveals a child who is significantly impaired by his ADHD." (Document No. 9, p. 5.) Claimant states that "[t]he Commissioner has erred by considering only the behavior in the structure of the classroom, and has not properly evaluated behavior outside that supportive environment. By failing to consider that factor, it has impacted on the analysis of Bryan's

7

overall impairment. By considering only the school environment, the Commissioner has not properly analyzed the mother's credibility, the actual functional limitations imposed by [Claimant's] condition, and the overall functional limitations imposed by his ADHD." (Id., p. 6.) Claimant contends that the Commissioner erred in rejecting Mr. Brezinski's opinions to the extent that they were formulated on the basis of Ms. Hunter's reports and were contradicted by Claimant's grades in school. (Id., pp. 6 - 7.) Claimant asserts that the evidence as a whole supports the conclusion that Claimant had marked limitation in two domains of functioning – the ability to attend and complete tasks and age-appropriate social functioning. (Id., pp. 8 - 9.) Thus, Claimant argues that he met listing 112.11 medically and functionally. (Id.) The Commissioner asserts that the ALJ correctly evaluated the opinions of treating and examining sources and concluded that though Claimant's ADHD was found to be severe, it did not meet or medically or functionally equal listing 112.11. (Document No. 10, pp. 8 - 12.)

Analysis

The record contains the Disability Report as it was prepared by Ms. Hunter at the time of her filing of Claimant's application for benefits. (Tr. at 86 - 96.) Ms. Hunter stated that Claimant "is very hyper, he has little, if any, attention span. He cannot stay on any one task at home or at school. Has difficulty completing homework and chores." (Tr. at 87.) Ms. Hunter also prepared a Function Report indicating that Claimant's impairment did not limit Claimant's ability to talk, communicate or engage in physical activities or affect Claimant's behavior with other people. She further indicated uncertainty respecting Claimant's ability to progress in learning and help himself and cooperate with others in taking care of his personal needs. She indicated that Claimant's ability to pay attention and stick with a task was limited. (Tr. at 76 - 85.)

The record further contains documents indicating Claimant's treatment from April 25, 2001, through February 5, 2004, by Dr. Asma Safder, a pediatrician. (Tr. at 136 -138, 152 - 160, 167 - 170, 179 - 181.) It appears that Claimant was diagnosed as having ADHD and was prescribed Adderall[2] when he was in the first grade. (Tr. at 168 - 169.) It appears that Claimant's prescribed daily dosage of Adderall was initially 5 mg and was raised to 7.5 mg in October, 2002, after which Dr. Safder indicated that Claimant was "doing better." (Tr. at 169.) Dr. Safder stated in January, 2003, that Claimant "is functioning much better in school on medication." (Tr. at 138.) In a March 17, 2003, note, Dr. Safder states that Ms. Hunter reported that Claimant was "okay at school but meds are wearing off before he gets home; 'full blast at home.'" (Id.) It appears that Dr. Safder raised Claimant's prescribed dosage of Adderall to 10 mg. (Tr. at 170.)

On December 11, 2003, William A. Brezinski, M.A., conducted a psychological evaluation of Claimant at the request of Claimant's attorney. (Tr. at 171 - 177.) Mr. Brezinski summarized Claimant's social, developmental and medical history as he learned it from Ms. Hunter, his mother. He noted that Claimant was aggressive and disruptive during his interview of his mother and his mother indicated that he acted the same way at home. (Tr. at 171.) He noted that Claimant's mother advised that Dr. Safder diagnosed ADHD about eighteen months earlier and prescribed Adderall and that she ran out of the medication two days before the interview. (Tr. at 171 - 172.)[3] He further noted that Claimant's mother reported that Claimant's teacher indicated that Claimant was disruptive and

---

[2] Adderall is prescribed to treat attention deficit disorder. It increases attention and decreases restlessness in those who have ADHD.

[3] Dr. Safder does not indicate any further treatment for Claimant's ADHD for the period after Claimant's visit with Mr. Brezinski through February 5, 2004. (Tr. at 181.) Ms. Hunter testified that she did not give Claimant the prescribed medication for ADHD when he was on breaks from school but that he was on his medication on March 4, 2004, the day of the hearing. (Tr. at 234 - 235.)

aggressive at school. (Tr. at 173.) Mr. Brezinski stated that "I reviewed the criteria for ADHD with his mother and by her report, he met the diagnostic criteria for ADHD, Combined Type." He further found that Claimant "easily met the criteria for an Oppositional Defiant Disorder." (Tr. at 174.) Mr. Brezinski conducted intelligence and psychological testing and noted that "[i]t was difficult to keep him on task and it is likely that the test results were subsequently affected." (Tr. at 174.) Based upon Claimant's history and test results, Mr. Brezinski diagnosed ADHD, Combined Type, and Oppositional Defiant Disorder. (Tr. at 176.) He stated that "I consider these test results as well as the others to be confounded by his hyperactivity and inattention. He was almost always overactive and impulsive and always needed directions repeated. He was unable to remain persistent or to work at pace." (Id.) Mr. Brezinski stated further that "[h]is deficit in social functioning is exhibited frequently and reliably in multiple environments. It is more intense and has been more persistent than is typical of other young boys his age. As indicated by his mother, both his inattention and his difficulty in interacting with others interfere with his capacity to function when placed on athletic teams. His teacher has certainly indicated that the interference exists in the classroom. I also observed it in my office." (Id.) By letter to Claimant's attorney dated January, 19, 2004, Mr. Brezinski stated as follows (Tr. at 178.):

> I reviewed my evaluation and would like to indicate that [Claimant] clearly meets the listing for ADHD in reference to the Social Security Administration guidelines. More specifically, there is evidence that in multiple settings he is markedly inattentive, impulsive and hyperactive.
>
> He has marked impairment in age-appropriate social functioning as is indicated both by observational evidence and reports from other environments. He has marked difficulties in maintaining concentration, persistence, and pace and again this documentation is present for multiple environments. His difficulty with age-appropriate personal functioning is somewhat less extreme.

10

On December 16, 2003, having conducted an initial psychological interview and a therapy session (Tr. at 183 - 187.), Tonya M. McFadden, M.A., prepared a Mental Impairment Questionnaire (RFC & Listings). (Tr. at 161 - 165.) She indicated that Claimant's symptoms were impairment in impulse control, difficulty thinking or concentrating, hyperactivity and being easily distracted. She found that Claimant had moderate restriction of activities of daily living, marked difficulty in maintaining social functioning, extreme deficiency of concentration, persistence or pace and four or more episodes of decompensation. (Tr. at 164 - 165.)

Claimant's second grade teacher, Ms. Kathy Roberts, completed an ADHD Symptom Tracking System Form on January 8, 2004, indicating that Claimant failed to give attention to details or made careless mistakes in schoolwork or activities and talked excessively to his friends one to three times a day; had difficulty sustaining attention in tasks or play activities, had difficulty organizing tasks and activities, was easily distracted by extraneous stimuli and blurted out answers before questions were completed one to three times a week; and infrequently did not seem to listen when spoken to, did not follow through and failed to finish schoolwork, chores or duties, was reluctant to engage in tasks requiring sustained mental effort, lost things necessary for tasks or activities, was forgetful in daily activities, fidgeted with hands or feet or squirmed in his seat, left his seat in the classroom or other situations, ran around or climbed excessively, had difficulty playing or engaging in leisure activities quietly, was often "on the go", had difficulty awaiting his turn and interrupted or intruded on others. (Tr. at 123 - 124.) On March 14, 2003, Ms. Roberts completed a Teacher Questionnaire indicating that Claimant had no problems and his functioning was age-appropriate in four of five domains: acquiring and using information, interacting and relating with others, moving about and manipulating objects and caring for himself. She indicated that Claimant had problems functioning in the domain of attending and completing tasks designating changing

11

from one activity to another without being disruptive and organizing his things or school materials as obvious problem areas. She designated focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, completing class/homework assignments, completing work accurately without careless mistakes, working without distracting self or others and working at reasonable pace/finishing on time as slight problem areas. (Tr. at 130 - 135.) Claimant's grades in school were good and he was evidently learning and performing appropriately academically at the second grade level.

There are two Childhood Disability Evaluation Forms in the record dated January 24 and March 15, 2003. (Tr. at 139 - 151.) DDS physicians determined from the information available to them then that Claimant had ADHD and that it was not severe. These Evaluation Forms were completed after Dr. Safder began treating Claimant by prescribing Adderall and before Mr. Brezinski's Psychological Evaluation and Ms. McFadden's treatment of Claimant and Ms. Roberts' assessment of Claimant's ability to function.

The ALJ summarized all of the evidence discussed above in his decision and Ms. Hunter's testimony at the administrative hearing.[4] (Tr. at 18 - 22.) The ALJ apparently found Mr. Brezinski's opinions unpersuasive because Mr. Brezinski relied upon Ms. Hunter's subjective report of Claimant's behavior at home and at school, did not take into account that Claimant was not on his medication when he conducted his evaluation and Mr. Brezinski's opinions were inconsistent with reports of Claimant's teacher. (Tr. at 22.) The ALJ further appears to have found Ms. McFadden's opinions unpersuasive because they were based upon Ms. Hunter's report. (Id.) Without any analysis

---

[4] The ALJ did not mention the August 18, 2003, letter of Claimant's aunt, Ms. Muncy, or the August 21, 2003, letter of Ms. Teressa Kinder respecting Claimant's behavior though they might have some relevance. (Tr. at 121 - 122.)

of the evidence in consideration of the criteria set forth in listing 112.11A and B including those in listing 112.02B.2.a - d, the ALJ stated that "[b]ecause the evidence fails to establish that the claimant's impairment(s) meet or medically equals a listed impairment, the undersigned must determine whether the claimant has an impairment (or combination of impairments) that is 'functionally equal' to the listings and satisfies the 12-month duration requirement." (Tr. at 22.) The ALJ then proceeded with an analysis of the evidence in consideration of the six domains of functioning. (Tr. at 22 - 26.) The ALJ concluded that Claimant had ADHD cognizable as a severe impairment under the Social Security Act. It appears therefore that he concluded that the evidence indicated that Claimant met the criteria set forth in Listing 112.11A – marked inattentiveness, impulsiveness and hyperactivity. But the ALJ did not analyze the evidence in view of the B criteria separately or in combination with consideration of the domains of function. Rather, he concluded without analysis of the evidence that Claimant's impairment did not meet or medically equal a listed impairment (Tr. at 22.) and moved on to consideration of the domains of function. Assessing the evidence in view of the domains of function, the ALJ referred only to the reports of Claimant's teachers and not to Ms. Hunter's statements and testimony though the Regulations make Ms. Hunter's statements and testimony plainly relevant. The ALJ further stated conclusively and without any analysis in the text of his decision that Ms. Hunter's assertions relative to symptomatology and functional limitations and restrictions of activities of daily living have been considered in § 416.929 and SSR 96-7p, and are not fully credible as to a disabling impairment." (Tr. at 27, Finding No. 4.)

Summarizing the evidence is not enough. It is clear that the ALJ must analyze the evidence in his or her decision. The ALJ must accompany his or her decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by

substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). Quoting its decision in a prior case, the Court stated as follows:

> The courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Id. at 236 (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

The ALJ's failure to substantiate his conclusions in this case constitutes error. The ALJ's decision is not in conformity with applicable law and Regulations or supported by substantial evidence because (1) it contains no analysis of the evidence in consideration of the criteria set forth in listing 112.11; (2) the ALJ only refers to the reports of Claimant's teachers in considering the domains of function when the Regulations anticipate that Claimant's activities at home, at school and

in his community are to be considered; and (3) the ALJ does not explain how he concluded that Ms. Hunter's statements and testimony were or were not credible. The undersigned therefore finds that the Commissioner's decision denying SSI benefits to Claimant must be vacated and this matter must be remanded to the Commissioner for full consideration of all of the evidence of record and as may be submitted by Claimant and required by the Commissioner pertinent to Claimant's application in accordance with applicable law and Regulations.

Proposal and Recommendation

Based upon the foregoing, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Summary Judgement (Document No. 8.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 10.), **VACATE** the final decision of the Commissioner and **REMAND** this matter for further proceedings consistent with the District Court's decision and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: June 16, 2006.

*R. Clarke VanDervort* (signature)
R. Clarke VanDervort
United States Magistrate Judge